Hepinstall Steel Works, Inc. v. Commissioner.
Hepinstall Steel Works v. Commissioner
Docket No. 3217.
United States Tax Court
1944 Tax Ct. Memo LEXIS 142; 3 T.C.M. (CCH) 841; T.C.M. (RIA) 44269; August 9, 1944
*142 Thomas A. Williams, Esq., 1028 Whitney Bldg., New Orleans, La., for the petitioner. William G. Ruymann, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent determined deficiencies in income tax and excess profits tax against petitioner for the calendar year 1941 in the respective amounts of $1,850.77 and $353.16. The only question submitted is the reasonableness of the salaries paid by petitioner to two of its officers. Findings of Fact Petitioner is a Louisiana corporation, and its business was originally incorporated in 1931 under the name of R. R. Hepinstall, Incorporated. It acquired its present form and name by organization or reorganization in 1935. Petitioner operates a metal job shop erected for the fabrication of plate and structural steel, and is located in New Orleans, Louisiana. It filed its Corporation Income and Declared Value Excess Profits Tax Return and Corporation Excess Profits Tax Return for 1941 with the Collector for the District of Louisiana. Petitioner's return for each of the calendar years since it was organized was filed on the accrual basis. Since its organization, the president and vice president of petitioner *143 have been R. R. Hepinstall and his wife, Laura L. Hepinstall, who have also been the owners of all of its capital stock. Only common stock, $100 par value, has ever been issued, and since 1935 the outstanding shares have been held as follows: October 11, 1935, 30 shares outstanding - 28 shares issued in the name of Laura L. Hepinstall, 1 share in the name of R. R. Hepinstall, and 1 share in the name of E. George Rogers, which share was actually owned by R. R. Hepinstall. On December 15, 1937, the capital stock outstanding was increased from 30 to 50 shares by the issuance of an additional 20 shares to Mrs. Hepinstall. On May 14, 1941, the capital stock was increased to 180 shares by the issuance of an additional 40 shares to Mrs. Hepinstall and an additional 90 shares to R. R. Hepinstall. On December 31, 1941, the capital stock was increased to 200 shares by the issuance of 20 additional shares to R. R. Hepinstall, after which the 200 shares were distributed as follows: R. R. Hepinstall
111 Shares
E. George Rogers, nomine for
R. R. Hepinstall
1 Share Laura L. Hepinstall
88 Shares
In the balance sheet appearing as a part of its return, the petitioner reported as of the *144 beginning of 1941, common stock, $5,000; earned surplus and undivided profits, $20,375.32, and at the close of the year, common stock, $20,000; earned surplus and undivided profits, $27,971.81. The outstanding stock stood at $5,000 from January 1, 1941, to May 14, 1941, when 130 additional shares were issued, as shown above, thereby increasing the capital stock of the petitioner to $18,000, at which it stood until December 31, 1941, when 20 additional shares were issued, bringing the outstanding capital stock to $20,000 par value. R. R. Hepinstall, who organized petitioner, was born in St. Thomas, Ontario, Canada. He received a B.S. degree at Queens University, Kingston, Ontario, Canada, in 1914. He is licensed to practice as an engineer in Canada and Louisiana. He is a member of the Canadian Institute of Engineers. He has engaged in engineering work in Canada in connection with the erection of grain elevators, flour mills, coal docks and other heavy construction. He went to New Orleans in 1916 as an engineer in connection with the construction of a public grain elevator. In 1917 he designed and supervised the erection of an annex to the elevator. In 1918 he designed and served as *145 chief engineer for a cotton warehouse wharf on the Mississippi River, in New Orleans, and was chief engineer for Jahncke Shipbuilding Company, in connection with a contract with the United States Merchant Fleet Corporation for the construction of 93 steel ships. In 1918 and 1919 he was Office Engineer in Charge of warehouses Nos. 1, 2 and 3 of the Army Supply Base, built in New Orleans, at a cost of $15,000,000. Hepinstall practiced as a consulting engineer on his own account from 1921 to 1923. He organized the Canal Steel Works, Inc., in January 1923, and was one-half owner, and its vice president and general manager until 1931. He drew plans and supervised the building of its plant. He did all the engineering and technical work, designed all the structural steel work, and supervised the work in the shop. The corporation had a volume of business of about $200,000 to $300,000 a year. Hepinstall's compensation reached a maximum of $25,000 a year, including salary paid on a percentage basis and bonus. Through his work he had become acquainted with J. B. Simmons, president of Woodward Wight & Company, Ltd., of New Orleans, the largest supply house in the South. Hepinstall had no money, *146 and discussed with Simmons the advisability of forming a new company and establishing a job shop such as he wanted. Simmons assisted Hepinstall in his new undertaking, by financing the organization of petitioner through a personal loan of $10,000, and by having Woodward Wight & Company extend credit to petitioner for machinery. He also rented space in his company's warehouse to petitioner. In developing the business of petitioner Hepinstall did not observe normal working hours, often working day and night. By 1935 he realized that if his ideas were to be carried out and more business was to be obtained petitioner should have more space. He accordingly designed and drew plans for a new plant, and in 1936, started construction of it. Petitioner moved into the new plant in 1937. Simmons had died, but Woodward Wight & Company advanced cash and material in the amount of $34,237.79, and under an agreement entered into by the parties on May 26, 1937, exercised control over petitioner's affairs and expenditures. The agreement provided that 34 notes, 33 being for $1,000 and one for $1,237.79 (representing the above indebtedness), should be paid monthly, the first on August 15, 1937, and the *147 last on June 15, 1940. It also provided that the drawing account of officers' salaries would be as follows: R. R. Hepinstall, $300 monthly; Laura L. Hepinstall, $100 monthly; and C. C. Schaller, 75 cents an hour. It was agreed that petitioner would not make any capital expenditures, nor declare and pay dividends of any character, nor pay bonuses to anyone for any purpose whatever, without the consent of Woodward Wight & Company. The last note was paid in 1941. The new plant is located across the street from the warehouse in which the old plant was located. Hepinstall designed the plant so that machinery and equipment could be added to it, and it is not yet completed, to carry out his ideas fully. There is no other plant located in the New Orleans area for the fabrication of plate and structural steel that is as modern or that can be operated as economically and efficiently as the plant of petitioner. Some of its exceptional facilities are an all-concrete floor; automatic oxyacetylene cutting equipment; first radiograph machine used in New Orleans; large power presses which can bend material cold, or if heated, in less time; large overhead traveling cranes for handling heavy equipment *148 in the shop, and for loading and unloading cars; and a switch track for switching cars in and out of the plant. The old plant could only handle any one piece of material up to six tons, while the new plant can handle one piece up to 25 tons. From 1931 through 1941, Hepinstall devoted all his time to the business of petitioner, and was its president and its general manager. He has done all the necessary designing and engineering work on the jobs performed by petitioner. He has had general supervision over the shop, has been responsible for the business policies of petitioner, and through his personal contacts has been responsible for the greater portion of the sales volume of business done. During the first five years of operation, petitioner's business suffered losses, but in 1936 it netted its first large profit, and after moving into its larger and better location, the business has grown rapidly. The following table shows from 1931 through 1941, inclusive, petitioner's gross sales, gross income (before payment of salaries to Mr. and Mrs. Hepinstall), salaries paid to Mr. and Mrs. Hepinstall, net income of petitioner (after payment of salaries to Mr. and Mrs. Hepinstall), and dividends *149 declared: Compensation to:
Year
Gross Sales
Gross Income
Mr. Hepinstall
Mrs. Hepinstall
Net Income
1931
$ 33,721.40
$ 6,723.41
$ 2,250.00
$ 392.15 1932
37,566.35
5,840.54
4,200.00
(2,077.19)
1933
26,438.98
7,834.79
3,832.80
(132.70)
1934
44,377.08
9,488.22
3,000.00
(1,040.56)
1935
82,124.36
14,901.59
4,729.92
(1.83)
1936
142,840.86
32,264.39
8,400.00
$1,200.00
8,571.30 1937
245,208.86
59,603.67
16,633.82
1,200.00
9,570.53 1938
203,604.32
53,052.34
8,004.07
1,200.00
[1] 7,828.38 1939
201,476.80
56,976.76
8,955.53
1,200.00
[2] 6,162.38 1940
299,125.68
81,298.30
18,000.00
1,200.00
[3] 16,201.91 1941
284,663.10
56,551.64
19,200.00
1,200.00
5,846.24 Total
$1,601,147.79
$384,535.65
$97,206.14
$7,200.00
[4] $51,320.61 Dividends
Year
Declared
1931
None
1932
None
1933
None
1934
None
1935
None
1936
$2,250.00
1937
3,500.00
1938
None
1939
None
1940
None
1941
None
Total
$5,750.00
*150 The dividend of $2,250 declared in 1936 represented 75 percent on the capital stock of $3,000, and was paid by the issuance of notes in December of that year. These notes were paid as follows: $2,000, by the issuance of face amount capital stock of petitioner to Laura L. Hepinstall, in December 1937, and the balance of $250 was credited to her account during the month of December 1937 and paid in cash. The dividend of $3,500 declared in 1937 represented 70 percent on the capital stock of $5,000 then outstanding, and was paid by the issuance of notes during December 1937. These notes were paid on October 31, 1940, by a credit to petitioner's stock subscription receivable account, for which stock was issued on May 14, 1941, as follows: 90 shares to R. R. Hepinstall, and 40 shares to Laura L. Hepinstall. During the taxable year Mrs. Hepinstall was vice president of petitioner. She performed no work at the office of petitioner. She assisted her husband in entertaining guests who were customers of petitioner, in their home. No records were kept of the individuals entertained, nor of the dates they were entertained. At some time prior to 1941, she had permitted the use of her personal *151 securities by petitioner in making loans, for which she received no direct compensation. The first year for which she received payments designated as compensation in the form of salary was in 1936, which along with the compensation received by her husband, conformed to a resolution adopted by the board of directors on December 7, 1936. The petinent minutes of that meeting read as follows: "Mr. E. George Rogers, the secretary of the corporation, expressed the appreciation of the Board of Directors and the officers for the splendid and salutary services rendered the corporation during the calendar year of 1936 and explained that inasmuch as Mr. R. R. Hepinstall, president of the corporation, and Mrs. Laura L. Hepinstall, the vice-president of the corporation, have worked untiringly and effectively to make the operations of the company for the year 1936 successful, and that the president and vice-president have moreover served during the yer 1936 without any fixed compensation but with a tacit understanding that they should be compensated in such measure for the services rendered as the profits for the calendar year 1936 should warrant, upon motion of Mr. Rogers, duly seconded, the *152 following resolution was unanimously adopted: "Be it resolved by the Board of Directors of Hepinstall Steel Works, Inc. that the salary of the president of this corporation for the calendar year 1936 be fixed at the sum of $8,400.00, retroactive and effective as of January 1, 1936; and be it further resolved that the salary of Mrs. Laura L. Hepinstall, the vice-president of this corporation, for the calendar year of 1936, be fixed at the sum of $1200.00, retroactive and effective as of January 1, 1936.' E. George Rogers, who served as secretary of petitioner, was the person designated by Woodward Wight & Company to represent it in supervising the affairs and expenditures of petitioner. In 1941 Charles C. Schaller was secretary-treasurer of petitioner, and held the position of general superintendent. His duties consisted of the general supervision of the shop. He did some selling and some buying, and placed large mill orders and orders for special materials used in the business of petitioner. He was not a graduate engineer but had considerable practical experience, which fitted him for his position. He had worked with Hepinstall at the Canal Steel Works, Inc., and was being groomed *153 by Hepinstall to eventually take his place. While Schaller owned no stock of petitioner, he was interested in seeing the business operate at a profit because of an agreement which permitted him to receive 25 percent of net profits. He thought that he and Hepinstall were worth to petitioner the compensation they received from it. In 1941 Hepinstall, as president, received salary and additional compensation in the amount of $19,200. Laura L. Hepinstall received $1,200, and C. C. Schaller received $7,800. In disallowing the additional portion of the compensation paid to Hepinstall and the entire amount paid to Laura L. Hepinstall, respondent explained in his deficiency letter as follows: "On the basis of the evidence submitted, it is held that $12,000.00 constituted a reasonable payment for services rendered by your President, Mr. R. R. Hepinstall, and that your Vice-President, Mrs. R. R. Hepinstall, actually rendered no services which would warrant the allowance of any compensation therefor. The bonus of $7,200.00 paid your president, and the salary of $1,200.00 paid your vice president are accordingly disallowed." The amount paid to R. R. Hepinstall in 1941 was reasonable for the *154 services rendered. The amount paid to Laura L. Hepinstall in 1941 was not for services rendered. Opinion Respondent has determined that the amounts paid by petitioner in 1941 to Hepinstall and Laura L. Hepinstall, president and vice president, respectively, and owners of all of petitioner's stock, were in excess of reasonable amounts for personal services actually rendered within the meaning of section 23 (a) (1) of the Internal Revenue Code. [1] He has disallowed the deduction claimed in excess of $12,000 with respect to the amount paid to Hepinstall, and the entire amount of $1,200 paid to Mrs. Hepinstall. *155 It has been held repeatedly by this and other courts that in controversies over the deduction of officers' salaries a taxpayer must show that the amounts involved are necessary expenses of the trade or business, that they are reasonable compensation for the services rendered, and are not in fact distributions of profits in the guise of salaries. In the instant case, the two officers whose compensation is involved are the stockholders of petitioner, and are husband and wife. Ordinarily such compensation claimed as deductions should be scrutinized carefully to ascertain whether the statutory provisions are satisfied. In determining the reasonableness of salaries, the capital employed, volume of business, amounts of gross and net income, duties discharged and responsibilities assumed are proper matters for consideration. The record shows that during most of the taxable year petitioner had outstanding stock of a par value of $18,000, all of which belonged to the Hepinstalls. Its gross income of $56,551.64 was considerably larger than the sum of its capital and surplus, which, according to petitioner's 1941 return, varied from $25,375.32 at the beginning of the year to $47,971.81 at *156 the end of the year. The net income before deducting the salaries in question was $26,246.24, and after the deduction, was $5,846.24, which represented a return of approximately 12 percent on capital and surplus as it stood at the end of the year and in excess of 25 percent as of the beginning of the year. In January 1941, the board of directors determined what the salary of Hepinstall would be for that year, and such determination of the value of the services Hepinstall rendered is entitled to some weight, and it is noted that the resolution was approved by Schaller, who was superintendent of the plant and was himself entitled to a percentage of the profits, and by Rogers, the representative of Woodward Wight & Company, petitioner's principal creditor. Taking the above factors into consideration, the increased compensation was not incommensurate with the services and responsibilities of Hepinstall. Hepinstall had built the business, and its success was almost wholly due to his experience in that particular field, his engineering skill, his executive ability, his salesmanship and his constant labors. Such being the situation, we are of the opinion and hold that the salary of Hepinstall *157 determined by the board of directors in January 1941, for the year 1941, in the amount of $12,000 plus 50 percent of the net profits, was reasonable, and petitioner is entitled to deduct such amount from its gross income in computing its net income for that year. As to Laura L. Hepinstall, we have a different situation. Admittedly, she did not work at the office or plant. Neither did she perform any of the duties ordinarily performed by a salaried officer or employee. On earlier occasions, she had permitted her personal securities to be used as security for loans made by petitioner, but even if she should deserve some pay therefor, the year does not appear to have been 1941, and the remuneration would not be salary. There is some general testimony that she helped her husband entertain some customers in their home during the year, but there is no record of how many, who they were, when they were entertained and what benefits were received by petitioner from such entertainment, or that her efforts were beyond those of a wife and helpmate. Petitioner's claim that the amounts paid to Laura L. Hepinstall as salary represented a reasonable allowance for personal services actually rendered *158 and should therefore be allowed as a deduction in computing its net income is denied. The petition contains a further allegation of error to the effect that the respondent erred in determining the proper allowable addition to invested capital in respect of the issuance of additional capital stock in May of 1941. We have no proof on this point, however, and not being pressed by petitioner in its brief, we conclude that it has been abandoned. Petitioner also alleged that respondent was in error in failing to take into consideration the Louisiana State income tax in his recomputation of petitioner's taxes. Whatever the petitioner may have had in mind in framing this allegation, it offered no proof on the point and has made no showing that the Louisiana State income tax is here involved. Decision will be entered under Rule 50. Footnotes
1. Adjusted by Commissioner from $5,629.25. ↩
2. Adjusted by Commissioner from $3,033.88. ↩
3. Adjusted by Commissioner from $13,118.43. ↩
4. Without adjustments total would have been $42,909.50↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (a) Expenses. - (1) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩